The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESMTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL BROCK, et al,
Plaintiffs,

v.

CITY OF BELLINGHAM AND MAYOR
SETH FLEETWOOD,
Defendants.

NO. 2:24-cv-850

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## I.    INTRODUCTION

This matter comes before the Court on a Motion to Dismiss filed by Defendants City of Bellingham ("City") and former City Mayor Seth Fleetwood (collectively "Defendants"). Dkt. No. 17.[1] Defendants seek dismissal, with prejudice, of each of the eleven claims asserted by Plaintiffs Michael Brock and 25 other individuals ("Plaintiffs"), all former employees of the City who refused to comply with Defendants' COVID-19 vaccine mandate. Having reviewed the Second Amended Complaint and exhibits thereto; the Motion to Dismiss and the briefs and exhibits filed in support of and in opposition thereto; and the relevant caselaw, the Court finds and rules as follows.

---

[1] Being unopposed, the Motion for Leave to File Sur-reply, Dkt. No. 22, is granted.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS
- 1

## II.    BACKGROUND

In early 2020, the COVID-19 virus emerged in the U.S. and around the world as one of the most significant and acute public health crises in at least a generation. COVID–19 was widely acknowledged to be a "highly contagious, dangerous, and ... deadly disease." *Biden v. Missouri*, 595 U.S. 87, 93 (2022). In the years that followed, the COVID-19 pandemic would wreak havoc on the public health of countries around the world and, to date, is responsible for the death of an estimated 1.2 million people in the U.S. alone. *See* https://covid.cdc.gov/covid-data-tracker/#maps_deaths-total (last visited 1/13/2025).

In response to this crisis, Washington Governor Jay Inslee declared a State of Emergency on February 29, 2020, and "[g]overnments at all levels instituted restrictions to curb the transmission of the virus," including mask mandates and limitations on public gatherings. *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 752 (9th Cir. 2021) (citing *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief)). By late 2020, scientists had developed vaccines that would prove effective in slowing the spread of COVID-19 and reducing the risk of serious illness and death caused by the virus. *See* August 23, 2021 letter from FDA Chief Scientist Denise M. Hinton ("FDA Approval Letter"), Attached as Ex. E to Sec. Am. Compl., ("SAC") (granting full FDA approval of the Pfizer vaccine, and noting that based on available data, "the vaccine was 95% effective . . . in preventing COVID-19 occurring at least 7 days after the second dose.").[2]  In December of 2020, FDA exercised its authority to issue

---

[2] The Court takes judicial notice of the August 23, 2021 letter from Chief Scientist Hinton, attached as Exhibit E to the Second Amended Complaint, and of the assertions in that letter, including the statement that "[b]ased on the totality of scientific evidence available to FDA, *it is reasonable to believe that Pfizer-BioNTech COVID-19 Vaccine may be effective in preventing COVID-19*, and that, when used under the conditions described in this authorization,

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 2

1  "emergency use authorization" ("EUA") for one of those vaccines, the Pfizer-BioNTech

2  ("Pfizer") two-dose mRNA vaccine (the "Pfizer vaccine") for individuals 16 and older.[3] *See*

3  FDA, *Comirnaty and Pfizer-BioNTech COVID-19 Vaccine*, https://www.fda.gov/emergency-

4  preparedness-and-response/coronavirus-disease-2019-covid-19/comirnaty-and-pfizer-biontech-

5  covid-19-vaccine; 21 U.S.C. § 360bbb-3(a)(1) (FDA may issue EUA for FDA-regulated products

6  "intended for use" in responding to actual or potential emergency before such products receive

7  full FDA approval.).

8        On August 23, 2021, FDA granted full approval to that Pfizer vaccine, labeled and

9  marketed under the name "COMIRNATY®," for "the prevention of COVID-19 disease in

10  individuals 16 years of age and older." *Church v. Biden*, 2022 WL 1491100, at *2 (D.D.C. May

11  11, 2022); *see* FDA Approval Letter (August 23, 2021), SAC, Ex. E; *see also Curtis v. Inslee*, 709

12  F. Supp. 3d 1257, 1263–65 (W.D. Wash. 2023) (taking judicial notice that the Pfizer-BioNTech

13  vaccine was approved on August 23, 2021 as a fact that is "accurately and readily determined"

14  _____

15  the known and potential benefits of Pfizer-BioNTech COVID-19 Vaccine when used to prevent COVID-19
outweigh its known and potential risks." SAC, Ex. E (emphasis added). For purposes of this motion to dismiss, as

16  outlined *infra* Section III.A., while the Court will accept as true the well-pleaded facts as alleged in Plaintiffs'
Second Amended Complaint, the Court does not, and is not required to, accept as true those allegations that are
contradicted by judicially noticeable facts. *See Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 725 (9th

17  Cir. 2024) ("It is true that we need not accept as true allegations that contradict matters properly subject to judicial
notice.") (cleaned up, citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). In this case, for

18  instance, Plaintiffs have repeatedly alleged that the COVID-19 vaccines "did not prevent transmission or infection."
*See, e.g.*, SAC, ¶ 141. Critically, Plaintiffs do not actually dispute the facts contained in the FDA Approval Letter, as

19  they do not allege that the vaccines *never* prevent transmission or infection. Furthermore, the CDC has provided data
establishing that, to the contrary "[t]he incidence of SARS-CoV-2 infection . . . is higher in unvaccinated than

20  vaccinated persons." *See* H. Scobie, *et al.*, *Morbidity and Mortality Weekly Report (MMWR), Monitoring Incidence
of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status* (Sept. 17, 2021) (asserting that after Delta
became the most common variant, the risk of infection was five times greater in unvaccinated than vaccinated

21  people). These statements are not "subject to reasonable dispute" and, as noted above, are not specifically disputed
by Plaintiffs in any event. Fed. R. Evid. 201(b). The Court therefore takes judicial notice of these data as well.

22  [3] FDA also later issued EUA for vaccines developed by Moderna and Johnson and Johnson. *See* FDA, *Moderna
COVID-19 Vaccine*, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-

23  19/moderna-covid-19-vaccine; FDA, *Janssen COVID-19 Vaccine*, https://www.fda.gov/emergency-preparedness-
and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine.

24  ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

25

from the FDA's approval and CDC's explanation, citing Fed. R. Evid. 201(b); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 283 (2d Cir. 2021)).

In early fall 2021, following a surge of reported COVID cases related to the emergent Delta strain of the virus and the FDA's full approval of the Pfizer vaccine, federal, state, and local government entities around the country issued mandates requiring vaccination of certain groups, including healthcare workers and public employees. *See, e.g., Church*, 2022 WL 1491100, at *3 ("On September 9, 2021, President Joseph R. Biden issued Executive Order 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees.") (citing Exec. Order 14043, 86 Fed. Reg. 50,989 (Sept. 9, 2021)). Relevant to the instant case, on September 21, 2021, the City of Bellingham issued Executive Order 2021-01 (the "Order"), which required all City employees, volunteers, and on-site indoor contractors to be fully vaccinated against COVID-19 no later than December 3, 2021 as a condition of continuing to work with the City. *See* Order, SAC, Ex. A. The Order explicitly defined "fully vaccinated" to mean "two weeks after the second dose of the Pfizer or Moderna vaccine or two weeks after the single dose of Johnson & Johnson's Janssen vaccine." Order at 4. The Order provided exemptions for "legitimate medical reasons or sincerely held religious beliefs." *Id*.

Plaintiffs in this case were employees, contractors, and volunteers working for the City of Bellingham who were subject to and refused to comply with the Order, and were relieved of their duties as a consequence.[4] SAC, ¶¶ 2, 12. Plaintiffs filed the instant action on June 13, 2024. As discussed in detail below, their Second Amended Complaint asserts 11 causes of action, under 42 U.S.C. § 1983 and the Due Process and Equal Protection clauses to the U.S. Constitution, and for

---

[4] For simplicity, the Court will refer to this group as city "employees" and to their work with the City as "employment," though the group also includes contractors and volunteers.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 4

violations of federal and state statutory and common law. By this motion, Defendants seek

dismissal, with prejudice, of all of Plaintiffs' claims.

## III.    DISCUSSION

### A.  Standard on Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint

must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is "a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Dismissal is

appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a

cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th

Cir. 2008).

The court is required to presume that all well-pleaded allegations are true, to resolve all

reasonable doubts and inferences in the pleader's favor, and to view the pleading in the light most

favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249

(2009). However, a court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Additionally, the Court is

not "required to accept as true allegations that contradict exhibits attached to the Complaint or

matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 5

998 (9th Cir. 2010); Fed. R. Evid. 201(b). Matters properly subject to judicial notice include those that are "not subject to reasonable dispute," that are "generally known," or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). In opposing a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B. First Cause of Action: § 1983 – Deprivation of the Option to Refuse

Plaintiffs' First Cause of Action is labeled "Deprivation of the Option to Refuse." SAC, ¶¶ 171-84. The claim is predicated on an allegation that the Pfizer vaccine was an "investigational drug." Plaintiffs contend, for example, that Defendants violated the law when "they issued a Policy mandating that Plaintiffs be injected with investigational drugs to keep their employment with the City," and "required Plaintiffs to use federally funded investigational drugs outside of their free consent." *Id.*, ¶¶ 170, 175. The First Cause of Action is brought under 42 U.S.C. § 1983, and claims violations of various federal statutes and regulations, including the Public Readiness and Emergency Preparedness Act, 42 U.S.C § 247d-6d *et seq.* ("PREP Act") and the Emergency Use Authorization Act, 21 U.S.C. § 360bbb-3 ("EUA Act"), in addition to violations of Plaintiffs' unspecified "Constitutional rights." *Id.*, ¶ 184. As discussed further below, the Court concludes that the First Cause of Action is both factually and legally insufficient, and should be dismissed for two independent reasons: (1) because, based upon judicially noticeable facts and facts established in documents attached to the Second Amended Complaint, the Pfizer vaccine was not an "investigational drug" at any time Plaintiffs were subject to the Order; and (2) because Plaintiffs have failed to demonstrate that the federal authorities on which they rely create any

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 6

rights enforceable under § 1983.

### 1. Whether Pfizer Vaccine Available to Plaintiffs Was an "Investigational Drug"

As noted, Plaintiffs' First Cause of Action maintains that Defendants denied Plaintiffs the "option to refuse," and violated their federal statutory and constitutional rights when they required that Plaintiffs "be injected with investigational drugs to keep their employment with the City." SAC, ¶ 170. Although the Court is unable to discern from the Complaint an explicit legal or scientific definition of the phrase "investigational drug," it understands Plaintiffs to mean "an investigational vaccine not licensed for any indication" and "without a legal indication to treat, cure, or prevent any known disease." SAC, ¶¶ 49, 50 (alleging that the EUA Pfizer vaccine "is an investigational vaccine not licensed for any indication."). Plaintiffs cite a December 11, 2020 Letter to Pfizer from Denise Hinton, FDA Chief Scientist, for the proposition that Plaintiffs were obligated to take an "investigational drug." SAC, Ex. D at 1-2 (issuing FDA's EUA for Pfizer vaccine "for the prevention of COVID-19" in individuals 16 years and older, noting "[i]t is an investigational vaccine not licensed for any indication").[5]

Plaintiffs' reliance on the December 11, 2020 letter for the proposition that the Pfizer vaccine was an "investigational drug" is misplaced. As outlined above, Defendants issued the Order over nine months later, on September 21, 2021, and gave Plaintiffs (and other city employees) until December 3, 2021 to become fully vaccinated. By that time—indeed, on August 23, 2021, a full month before the City issued the Order—FDA had "approved the biologics license application (BLA) submitted by BioNTech Manufacturing GmbH for COMIRNATY (COVID-19 Vaccine, mRNA) for active immunization to prevent COVID-19 caused by SARS-

---

[5] The Court takes judicial notice of the December 11, 2020 letter, which is attached to the Second Amended Complaint at Ex. D. *See* Fed. R. Evid. 201(b).

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 7

CoV-2 in individuals 16 years of age and older." FDA Approval Letter, SAC, Ex. E. In doing so, FDA emphasized that "COMIRNATY (COVID-19 Vaccine, mRNA) is the same formulation as the Pfizer-BioNTech COVID-19 Vaccine and can be used interchangeably with the Pfizer-BioNTech COVID-19 Vaccine to provide the COVID-19 vaccination series." *Id*. In other words, by the time Defendants issued the Order mandating vaccination of City employees, the Pfizer vaccine was no longer (if it had been before) an "investigational drug." Multiple courts have reached this same conclusion, rejecting the same argument that Plaintiffs make here. *See, e.g., Curtis v. Inslee*, 709 F. Supp. 3d at 1264 ("On August 23, 2021, the Pfizer-BioNTech vaccine, COMIRNATY®, received full approval for individuals 16 and older.") (citing, *inter alia*, FDA Approval Letter); *Church v. Biden*, 2022 WL 1491100, at *2 (D.D.C. May 11, 2022) ("On August 23, 2021, the FDA approved the vaccine created by Pfizer BioNTech, which would be marketed as "Comirnaty," for "the prevention of COVID-19 disease in individuals 16 years of age and older.") (citing FDA News Release, FDA Approves First COVID-19 Vaccine (Aug. 23, 2021)); *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707 (C.D. Cal. 2022) ("The Pfizer vaccine has received full FDA approval, and is no longer merely authorized under the EUA statute. Therefore, the informed consent requirements of the EUA statute do not apply to the Pfizer vaccine.") (citation omitted). Plaintiffs have not cited, and the Court has been unable to identify, authority to the contrary.

Indeed, Plaintiffs essentially concede that FDA granted the Pfizer vaccine labeled COMIRNATY® full approval well before the December 3, 2021 deadline provided in the Order. SAC, ¶ 77. Plaintiffs nevertheless allege that "[t]he only drugs available to Plaintiffs for complying with Defendants Policy were FDA-classified as investigational," *id*., ¶ 230, apparently

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 8

implying that they were obligated to take Pfizer's pre-approval EUA vaccine, presumably because the drug bearing the COMIRNATY® label was not available.[6] Plaintiffs assert that the COMIRNATY® formulation is somehow materially distinct from the formulation approved for EUA use. Plaintiffs fail, however, to cite any facts supporting this claim which, being conclusory, is one the Court is not obligated to accept as true. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001). This is particularly so given that the only available evidence is to the contrary. While FDA acknowledged in its approval letter that Pfizer's COMIRNATY® and EUA "products are legally distinct," it went on to emphasize that any "differences [] do not impact safety or effectiveness." Ex. E to SAC, at n. 8. As clearly stated in the FDA Approval Letter, "[t]he licensed vaccine has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns." *Id*. The FDA elsewhere in that letter repeated, as noted above, that "COMIRNATY (COVID-19 Vaccine, mRNA) is the same formulation as the Pfizer-BioNTech COVID-19 Vaccine and can be used interchangeably with the Pfizer-BioNTech COVID-19 Vaccine to provide the COVID-19 vaccination series." *Id*. at 2. Plaintiffs have failed to allege facts disputing these statements, or supporting their conclusory assertion that there are differences in the formulations or the labeling of the drugs that are significant, either medically or legally. Multiple courts have concluded there are not. *See, e.g., Roberts v. Inslee*, 2024 WL 1160895, at *4 (E.D. Wash. Mar. 18, 2024) ("[T]he

---

[6] Defendants argue that Plaintiffs "fail to explain why they could not have complied with the Order by receiving the Comirnaty vaccine." Defs.' Rep. at 3. This failure would be fatal to Plaintiffs' First Cause of Action as well. However, at this motion to dismiss stage the Court must "construe[s] the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), and therefore reasonably infers from the ambiguous allegation at SAC ¶ 230 that the COMIRNATY® vaccine was somehow not available to Plaintiffs, and for purposes of this motion accepts this implicit allegation as true.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

Pfizer-BioNTech and Comirnaty vaccines were identical in all but name."); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1247 (D. Or. 2021) ("On December 11, 2020, Pfizer-BioNTech received an EUA for that vaccine in the United States under the name 'Pfizer-BioNTech COVID-19 Vaccine.' . . . The FDA approval [of the same vaccine, under the name COMIRNATY®] on August 23, 2021 was for the *physically, chemically, and biologically identical vaccine*.") (emphasis in original); *Navy Seal 1 v. Biden,* 574 F. Supp. 3d 1124, 1131 (M.D. Fla. 2021) ("Pfizer has produced vaccines bearing the 'emergency use authorization' label but nonetheless complying with the technical, scientific, compositional, manufacturing, and other requirements of the FDA license. Comirnaty comprises 'the same formulation as' Pfizer's emergency vaccine and can be used interchangeably...to provide [the two-dose] vaccination series[.]' The plaintiffs identify no factual distinction between Pfizer's vaccine bearing the emergency label but produced in compliance with the FDA license and Pfizer's 'interchangeable' vaccine bearing the Comirnaty label.").

Similarly here, Plaintiffs have failed to demonstrate that any purported distinction bears a factual or legal significance. They have also failed to cite any authority for the novel and implausible proposition that a licensed drug somehow becomes "investigational" based upon nothing more than a difference in the name under which it is marketed, despite FDA's repeated statements that the formulations are the same. Given the judicially noticeable facts referenced above, and the overwhelming weight of legal authority, the Court concludes that the Pfizer vaccine available to Plaintiffs was not an "investigational drug" at any time relevant to Plaintiffs' claims. For this reason alone, Plaintiffs' First Cause of Action, predicated on the assertion that only "investigational drugs" were available to them, must be dismissed.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

2.   **Whether Federal Laws on Which Plaintiffs Rely Support § 1983 Cause of Action**

Defendants also seek dismissal of the First Cause of Action because Plaintiffs have failed

to invoke a federal right that may be enforced under § 1983. Section 1983 "provide[s] an express

cause of action to any person deprived (by someone acting under color of state law) of 'any rights

... secured by the Constitution and laws'" of the United States. *Health & Hosp. Corp. of Marion*

*Cnty. v. Talevski*, 599 U.S. 166, 171 (2023). The Supreme Court has interpreted this to mean that

the provision "can presumptively be used to enforce unambiguously conferred federal individual

rights, unless a private right of action under § 1983 would thwart any enforcement mechanism

that the rights-creating statute contains for protection of the rights it has created." *Id*. at 172

(citing *Fitzgerald v. Barnstable School Comm*., 555 U.S. 246, 253–255 (2009); *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 284, and n. 4 (2002)). It is Plaintiffs' position that "rights-creating language . .

. exists in both the EUA statute (the option to accept [or] refuse) and the PREP Act (the right to be

informed of the voluntary nature of the program)." Pls.' Op. at 7. Plaintiffs' First Cause of Action

also refers to the "Provider Agreement," which is attached as Exhibit C to the Second Amended

Complaint, as a source of rights enforceable under § 1983. SAC, ¶ 184.

Not every federal law creates rights that may be enforced under § 1983. Indeed, as

reaffirmed in *Talevski*, in evaluating whether a statute creates rights enforceable under § 1983,

"precedent sets a demanding bar." 599 U.S. at 180 (citing *Gonzaga Univ.*, 536 U.S. at 280).

Courts "must employ traditional tools of statutory construction to assess whether Congress has

'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff

belongs." *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 283, 285–86). A statute

unambiguously confers individual rights if it is "phrased in terms of the persons benefited" and

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

"contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Id*. (quoting *Gonzaga*, 536 U.S. at 284, 287). Moreover, even if "a statutory provision unambiguously secures rights, a defendant may defeat the presumption by demonstrating that Congress did not intend that § 1983 be available to enforce those rights." *Id*. at 186 (cleaned up). The Court reviews each of the authorities on which Plaintiffs' First Cause of Action relies in turn.

### a.  The Emergency Use Authorization Act

Plaintiffs attempt to bring their § 1983 claim under, among other authorities discussed below, the informed-consent provisions of the Emergency Use Authorization statute. 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II). That section provides, in relevant part, that "[w]ith respect to the emergency use of an unapproved product, the Secretary . . . shall . . . establish . . . [a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, [and] of the consequences, if any, of refusing administration of the product." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II).

The Court concludes, as several courts have already concluded (unanimously, as far as the Court has been able to determine), that this provision does not create rights privately enforceable under § 1983 (or otherwise[7]). *See, e.g., Curtis v. Inslee*, 2024 WL 810503, at *5 (W.D. Wash.

---

[7]As the Supreme Court has observed, the initial inquiry as to whether a right is "unambiguously" conferred, whether for enforcement as a private right of action implied by the statute itself, or under § 1983, is essentially the same. This is true even though the next step (whether that right may be enforced as an implied right of action through a mechanism created by the statute itself, or through § 1983) may differ. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("A court's role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in discerning whether personal rights exist in the implied right of action context."). Myriad courts have concluded at the first step that the statute at issue here does not create rights that are enforceable in a private right of action implied in the statute itself. *See, e.g., PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("Section 337(a) of the FDCA [of which the EUA is a part] bars private enforcement of the statute, stating that "all such proceedings for the enforcement, or to restrain violations, of this [Act] shall be by and in the name of the United States."); *see also Navy Seal 1 v. Biden*, 574 F. Supp. 3d 1124, 1130 (M.D. Fla. 2021) (21 U.S.C. § 360bbb-

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

Feb. 27, 2024) (in relying on the EUA provision, "Plaintiffs' proposed second amended complaint again fails to point to federal law . . . that 'unambiguously confer[s]' individual federal rights enforceable under § 1983 which would entitle them to relief here."); *Peralta v. New York City Dep't of Educ.*, 2023 WL 6201507, at *6 (E.D.N.Y. Sept. 22, 2023)("Section 360bbb-3 does not provide an individual right. . . . [Plaintiff] has failed to identify any right conferred by Section 360bbb-3 that she can vindicate in a Section 1983 cause of action."). The provision that Plaintiffs cite merely directs the Secretary of Health and Human Services to "establish . . . appropriate conditions" to "ensure" that individuals under certain circumstances are properly informed about emergency use medications. It is not "phrased in terms of the persons benefited" and contains no "rights-creating" or "individual-centric" language. *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287).

Even if the EUA provision did create presumptively enforceable rights, it is nevertheless evident that "Congress did not intend that § 1983 be available to enforce those rights." *Talevski* at 186. The federal Food, Drug, and Cosmetic Act ("FDCA"), which contains the EUA provision, includes an express provision limiting enforcement actions to those brought by "a State in its own name" or by the United States. *See Standley on behalf of B.M.S. v. Nelms*, 2024 WL 1793667, at *3 (9th Cir. Apr. 25, 2024) (rejecting § 1983 claim brought under § 360bbb-3(e)(1)(A)(ii)(III) because the statute "expressly states that (subject to exceptions not relevant here) all proceedings to enforce that statute 'shall be by and in the name of the United States.'") (citing 21 U.S.C. §

---

3(e)(1)(A)'s "'option to accept or refuse' an emergency vaccine confers no private right of action, creates no 'opportunity to sue the government[,]' and permits enforcement by the United States and by the states in specific circumstances only.") (citing *Doe v. Franklin Square Union Free Sch. Dst.*, 568 F.Supp.3d 270, 292 (E.D.N.Y. 2021), *Bridges v. Houston Methodist Hosp.*, 543 F.Supp.3d 525, 527–28 (S.D. Tex. 2021)). For this reason as well, Plaintiffs' attempt to bootstrap an "option to refuse" claim through § 1983 is without merit.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

337(a)); *Curtis*, 2024 WL 810503, at *5 ("[E]ven if 21 U.S.C. § 360bbb-3(e) unambiguously

conferred individual federal rights which were presumptively enforceable under § 1983, Congress

evinced an express intention that § 1983 was not available to enforce those rights – only a State or

the United States may sue under the statute.") (citing *Talevski* at 186);

Plaintiffs' reliance on the EUA provision additionally fails because, even setting aside the

fatal flaws in a claim based on the statute as outlined above, Plaintiffs' allegations fall outside of

the scope of that provision. As discussed *supra* § III.B.1., the Pfizer vaccine in question was not,

during the relevant time period, an "unapproved product," an element of the statute. *See* §

360bbb-3(e)(1)(A)(ii)(II) (referencing "the emergency use of an unapproved product"). Moreover,

the EUA concerns "the interaction between the medical provider and the person receiving the

vaccine, not the interaction between an employer and an employee receiving a vaccine." *Norris v.*

*Stanley*, 73 F.4th 431, 438 (6th Cir. 2023). "[A]s other courts have held, those conditions of

informed consent only relate to those who 'carr[y] out any activity for which the authorization is

issued,' which are the medical providers who administer the vaccine, not those who issue vaccine

mandates." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1256 (D. Or. 2021); *see also Bridges v.*

*Methodist Hosp.*, 2024 WL 4354816, at *4 (S.D. Tex. Sept. 30, 2024) ("Plaintiffs do not allege

that any Defendant in this case directly administered the vaccine to them, so their claims against

Defendants fall outside of the reach of the informed-consent provisions of 21 U.S.C. § 360bbb-

3(e)(1)(A)(ii)(II)—even assuming, again, that Plaintiffs could root a Section 1983 action in the

informed-consent provisions in the first place."); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1171–

72 (D.N.M. 2021), *aff'd*, 2022 WL 2129071 (10th Cir. June 14, 2022) ("[The informed-consent]

provisions nowhere prevent the state, or any other entity, from requiring certain individuals to be

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

vaccinated against COVID-19.... This informed consent requirement only applies to medical

providers [who are] directly administering the vaccine[.]"); *Norris*, 73 F.4th at 438 ("The statute

is meant to ensure patients' consent to the pharmaceutical they are receiving, but this does not

mean that [defendant Michigan State University] cannot require vaccination as a term of

employment.").

Furthermore, Plaintiffs do not allege that Defendants failed to inform Plaintiffs of the

"option to accept or refuse administration of the product" or "of the consequences . . . of

refusing," the only rights even arguably created by the statute. To the contrary, Plaintiffs were

obviously aware of their option to refuse the vaccine, as they allege they in fact refused it; and

the Order itself explicitly outlines the consequences of such refusal. SAC, Ex. A. (mandating

vaccination "as a condition of employment"). For all of the reasons outlined herein, the EUA Act

does not create rights Plaintiffs may enforce under § 1983, and to the extent the First Cause of

Action is based on that provision it is dismissed.

### b.  The Public Readiness and Emergency Preparedness Act

Plaintiffs also cite the PREP Act as a source of federal rights they claim are enforceable

under § 1983. SAC, ¶¶ 171-84. "Congress passed the PREP Act to encourage the development

and deployment of medical countermeasures (such as diagnostics, treatments, and vaccines) by

limiting legal liability relating to their administration during times of crisis." *Curtis*, 2024 WL

810503 at *6 (citing *Maney v. Brown*, 91 F.4th 1296, 1298 (9th Cir. 2024)). The statute provides

immunity for a "covered person" from "all claims for loss caused by, arising out of, relating to,

or resulting from the administration to or the use by an individual of a covered countermeasure,"

such as a vaccine. 42 U.S.C.A. § 247d-6d(a)(1). A "covered person" includes "persons who

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1    make policy-level decisions regarding administration or use of covered countermeasures."

2    *Maney*, 91 F.4th at 1301. Suits against a covered person are limited to claims involving "death or

3    serious physical injury proximately caused by willful misconduct." 42 U.S.C.A. § 247d-6d.

4          Under the *Talevski* test outlined above, § III.B.2., the PREP Act does not

5    "unambiguously" create rights Plaintiffs might enforce under § 1983, and Plaintiffs fail even to

6    attempt to apply the *Talevski* test to their PREP Act claims. *See Sweeney v. Univ. of Colorado*

7    *Hosp. Auth.*, 2024 WL 3713835, at *8 (D. Colo. July 12, 2024) and cases cited therein ("[T]he

8    PREP Act does not create an individual right enforceable under § 1983."). Far from creating

9    such rights, the PREP Act in fact *limits* lawsuits based on administration of EUA drugs to claims

10    involving only "death or serious physical injury," and provides a narrowly circumscribed

11    procedure by which such claims might even be brought. *See, e.g.*, 42 U.S.C. § 247d-6d(e)(1)

12    (providing that claims under the PREP Act must "be filed and maintained only in the United

13    States District Court for the District of Columbia"). The sum of Plaintiffs' response is that "the

14    rights creating language under the EUA Statute has been retained under the PREP Act,"

15    essentially conceding that their PREP Act-based claims rise and fall with their EUA-based

16    claims. Pls.' Opp. at 11. Even if the EUA statute provided a basis for a § 1983 lawsuit, which it

17    does not, for the reasons outlined above, Plaintiffs' claims purportedly brought under the PREP

18    would fail. Such claims are accordingly dismissed.

19          **c.  The Provider Agreement**

20          Plaintiffs also rely on the "Provider Agreement," attached as Exhibit C to the Second

21    Amended Complaint, as a source of rights enforceable under § 1983. The Provider Agreement at

22    Exhibit C is essentially a form agreement, issued by the Centers for Disease Control and

23

24    ORDER GRANTING DEFENDANTS'
     MOTION TO DISMISS

25      - 16

1    Prevention ("CDC"), to be signed by a provider administering the COVID vaccine (*e.g.* a

2    pharmacy, medical practice, school, etc.), setting forth the provider's obligations. SAC, ¶ 3 ("The

3    CDC Program created the 'CDC COVID-19 Vaccination Program Provider Agreement' [] to be

4    signed by persons and entities participating in the CDC Program to ensure the State and the

5    State's recruited parties complied with their legal obligations."). Plaintiffs argue that the Provider

6    Agreement "requires strict adherence to the requirement of the EUA Statute and 'any EUA

7    letter' to inform individuals of their right to accept or refuse any product authorized under the

8    statute." *Id*. ¶ 38.

9            To the extent that Plaintiffs are attempting to rely on the Provider Agreement as an

10   independent source of rights enforceable under § 1983, they fail not least because the agreement

11   is intended to be between the CDC and vaccine providers who sign the agreement, and there is

12   no allegation that either Defendant was a party to that agreement. Plaintiffs fail to argue, let

13   alone demonstrate, that the Provider Agreement meets the "demanding bar" set by *Talevski* and

14   *Gonzaga* by containing "rights-creating language" enforceable under § 1983. 599 U.S. at  180;

15   *see also Curtis*, 709 F. Supp. 3d at 1269 (dismissing "investigational drug use" claim brought

16   against Gov. Inslee pursuant to the Provider Agreement because "there [was] no allegation that

17   Gov. Inslee signed this agreement"). Indeed, because § 1983 protects rights secured only "by the

18   Constitution and laws" of the United States, agency actions on their own do not create

19   enforceable rights under § 1983. *Id*., 709 F. Supp. 3d at 1268–69 ("Agency regulations . . .

20   cannot provide a private right of action where the authorizing statute has not so provided.")

21   (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke

22   a private right of action that Congress through statutory text created, but it may not create a right

23

24   ORDER GRANTING DEFENDANTS'
     MOTION TO DISMISS

25    - 17

1   that Congress has not.")). The Provider Agreement does not create rights enforceable under §

2   1983, and to the extent Plaintiffs' First Cause of Action is an attempt to claim as much, it is

3   dismissed.

4          In sum, for the reasons outlined above, Plaintiffs' First Cause of Action is dismissed.

5   **C. Fourth, Fifth and Sixth Causes of Action: Substantive Due Process**

6   **1. Plaintiffs' Substantive Due Process Claims**

7          Defendants seek dismissal of Plaintiffs' Fourth, Fifth, and Sixth Causes of Action, all

8   brought under 42 U.S.C. § 1983 as purported Substantive Due Process Clause claims. Plaintiffs'

9   Fourth Cause of Action is labeled "Substantive Due Process - Investigational Drug"; their Fifth

10  Cause of Action is labeled "Substantive Due Process - PREP ACT"; and their Sixth Cause of

11  Action is for "Substantive Due Process - Unwanted Medical Treatment." SAC, ¶¶ 217-32; 233-

12  43; 243-49.

13         Under the Due Process Clause, a state may not "deprive any person of life, liberty, or

14  property, without due process of law." U.S. Const. amend. XIV, § 1. The threshold question in a

15  substantive due process challenge to a state action is the proper standard of review. Strict scrutiny

16  applies where the plaintiff has identified a fundamental interest at stake, and "substantive due

17  process forbids the infringement of that right 'at all, no matter what process is provided, unless

18  the infringement is narrowly tailored to serve a compelling state interest.'" *Witt v. Dep't of Air*

19  *Force*, 527 F.3d 806, 817 (9th Cir. 2008) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

20  When the action does not infringe a fundamental right, "the statute need only bear a 'reasonable

21  relation to a legitimate state interest to justify the action.'" *United States v. Juvenile Male*, 670

22  F.3d 999, 1012 (9th Cir. 2012) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)).

23

24  ORDER GRANTING DEFENDANTS'
    MOTION TO DISMISS

25   - 18

To state a fundamental right, the plaintiff must identify a right that is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 720–21. In the absence of such a right, the less stringent rational basis review applies. *Id.*

In their Fourth Cause of Action, the purported right Plaintiffs assert is "a fundamental right to refuse an investigational drug without penalty or pressure." *Id.*, ¶ 221. In their Fifth Cause of Action, Plaintiffs again claim a violation of the PREP Act, 42 U.S.C. §§247d-6d,6e, which they assert "unambiguously create[s] rights enforceable pursuant to 42 U.S.C. § 1983." *Id.*, ¶ 235. In their Sixth Cause of Action, Plaintiffs assert a "fundamental right to refuse unwanted medical treatment." *Id.*, ¶ 247. The Court first examines in turn whether each claim identifies a "fundamental right" triggering strict scrutiny review.

### 2.    Whether Fourth, Fifth, Sixth Causes of Action Articulate a "Fundamental Right" That May Be Vindicated in a Due Process Claim

Each of these three causes of action fails to articulate a fundamental right at issue under the facts alleged in this case, and is therefore subject to rational basis review. As to the Fourth Cause of Action, the Court has already discussed at length the factual deficiencies in Plaintiffs' assertion that the Pfizer vaccine was an "investigational drug." *See supra*, § III.B.1. Because the vaccine available to Plaintiffs at the time was not "investigational," even assuming a fundamental liberty interest exists as Plaintiffs have articulated, that interest was not implicated under the facts alleged in this case. Similarly, regarding the Fifth Cause of Action, the Court has already discussed the flaws in Plaintiffs' claims regarding the PREP Act. *See supra*, § III.B.2.b. That statute does not create rights enforceable under § 1983, let alone articulate a "fundamental liberty interest" so "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty" as to support a substantive due process claim. *Glucksberg*, 521 U.S. at 720–21.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

Plaintiffs' Sixth Cause of Action, in which Plaintiffs claim a "fundamental right to refuse unwanted medical treatment," also fails to articulate a fundamental liberty interest. *See Boysen v. PeaceHealth*, 2024 WL 3888682, at \*9 (D. Or. Aug. 19, 2024) ("[T]he Covid-19 vaccine mandates do not implicate a fundamental right.") (citing *Kheriaty v. Regents of the Univ. of California*, 2022 WL 17175070, at \*1 (9th Cir. Nov. 23, 2022) (California educator's challenge of the University of California's COVID-19 vaccination policy as a violation of his due process rights did not implicate a fundamental constitutional right.); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (a substantive due process claim "depends on the existence of a fundamental right ingrained in the American legal tradition. . . [P]laintiffs lack such a right. To the contrary, vaccination requirements, like other public-health measures, have been common in this nation.")).

Perhaps recognizing this country's long tradition of upholding vaccine requirements,[8] Plaintiffs attempt to frame the interest in their Sixth Cause of Action as the "right to refuse unwanted medical treatment." SAC, ¶ 247. But none of the Plaintiffs allege that they were denied that right and were vaccinated against their will; to the contrary, they allege they in fact exercised

---

[8] In the seminal case of *Jacobson v. Commonwealth of Massachusetts* decided over a hundred years ago, the Supreme Court upheld a state-issued smallpox vaccine mandate. 197 U.S. 11 (1905). As Justice Harlan wrote, "[i]t must be conceded that some laymen, both learned and unlearned, and some physicians of great skill and repute, do not believe that vaccination is a preventive of smallpox. The common belief, however, is that it has a decided tendency to prevent the spread of this fearful disease, and to render it less dangerous to those who contract it. While not accepted by all, it is accepted by the mass of the people, as well as by most members of the medical profession. It has been general in our state, and in most civilized nations for generations. It is generally accepted in theory, and generally applied in practice, both by the voluntary action of the people, and in obedience to the command of law. Nearly every state in the Union has statutes to encourage, or directly or indirectly to require, vaccination; and this is true of most nations of Europe. . . . A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts.. . . The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases." 197 U.S. at 34–35.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1    that right. *See, e.g.*, SAC ¶ 191 ("Plaintiffs exercised their . . . fundamental rights . . . to refuse

2    unwanted medical treatment."). Instead, the right that Plaintiffs are asserting, based upon the facts

3    alleged, is "the right to continued employment . . . without receiving the COVID-19 vaccine."

4    *Sweeney,* 2024 WL 3713835, at *14; SAC, ¶ 2 ("When Plaintiffs exercised their fundamental

5    rights . . . to refuse unwanted medical treatment and, thus, refused to comply with the Order, they

6    were terminated from employment."). An innumerable number of federal courts have determined

7    that conditioning continued employment on receiving a COVID-19 vaccine does not implicate a

8    fundamental liberty interest. *See id*.; *Aleman v. Cnty. of Los Angeles*, 2024 WL 5257028, at *6

9    (C.D. Cal. Sept. 23, 2024) ("[H]ere the Policy requires vaccination as a condition of Plaintiff's

10   employment, and 'there is no fundamental right to governmental employment' under the

11   Fourteenth Amendment.") (citing *Canfield v. Sullivan*, 774 F.2d 1466, 1469 (9th Cir. 1985)); *see*

12   *also cases cited in Wilkins v. Herron*, 2024 WL 5200177, at *3, fn. 1 (9th Cir. Dec. 23, 2024)

13   ("[S]ince the onset of the COVID-19 pandemic, numerous courts have rejected claims that

14   COVID-19 vaccine mandates . . . violate individuals' substantive due process rights."); *We The*

15   *Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir. 2021) ("Plaintiffs provide no basis

16   for concluding that the vaccination requirement here ... violates a fundamental constitutional

17   right. Vaccination is a condition of employment in the healthcare field; the State is not forcibly

18   vaccinating healthcare workers."), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *Burcham v. City*

19   *of Los Angeles*, 562 F. Supp. 3d 694, 706 (C.D. Cal. 2022) (rejecting Los Angeles Police

20   Department employees' argument that City COVID-19 vaccine mandate was subject to strict

21   scrutiny in part because there is "no fundamental right to continued governmental employment");

22   *Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 139 (N.D.N.Y. 2021) ("[T]he Vaccine Mandate

23

24   ORDER GRANTING DEFENDANTS'
     MOTION TO DISMISS

25   - 21

conditions Plaintiffs' right to be employed at a covered entity on their vaccination against

COVID-19. Thus, the right that is being burdened is the right to employment at a covered

healthcare entity in New York."); *Bauer v. Summey*, 568 F. Supp. 3d 573, 592 (D.S.C. 2021)

("Plaintiffs' overly general characterization of the rights at issue as 'bodily integrity' or 'privacy'

falls short of the required 'careful description' of the liberty interest. Rather, a more appropriate

description is plaintiffs' interest in employment with defendants while unvaccinated for COVID-

19.") (citation and footnote omitted)). Even taking as accurate Plaintiffs' characterization of the

Pfizer vaccine as an "unwanted medical treatment," the only interest Plaintiffs have articulated at

their Sixth Cause of Action is the right to continued employment without receiving that

"treatment."[9]  Plaintiffs have failed to provide any authority for their contention that this interest

---

[9] Plaintiffs argue that the Ninth Circuit's recent decision in *Health Freedom v. Carvalho* establishes that the Court must take as true Plaintiffs' allegation that the Pfizer vaccine is not truly a "vaccine" because it does not provide 100% immunity, but is instead a "medical treatment" that merely reduces the severity of the disease's symptoms. 104 F.4th 715 (9th Cir. 2024) (reversing district court's dismissal of plaintiffs' challenge to vaccine mandate because allegation that vaccine did not prevent spread of COVID-19 had to be accepted as true at motion-to-dismiss stage, and therefore *Jacobson*, Supreme Court precedent upholding smallpox vaccine mandate, *see supra* n.8, did not necessarily apply). However, the record before the *Carvalho* court differed significantly from the record before this Court. In *Carvalho*, the defendant school district had failed to proffer any judicially noticeable evidence contradicting the plaintiffs' allegation that the vaccines did not prevent the spread of the disease. 104 F.4th at 725 ("It is true that we need not accept as true allegations that contradict matters properly subject to judicial notice. But even if the materials offered by [defendant] LAUSD are subject to judicial notice, they do not support rejecting Plaintiffs' allegations. LAUSD only provides a CDC publication that says "COVID-19 vaccines are safe and effective." But "safe and effective" for what? LAUSD implies that it is for preventing transmission of COVID-19 but does not adduce judicially noticeable facts that prove this.") (cleaned up). Here, Defendants *have* provided judicially noticeable evidence (including documents attached to the Second Amended Complaint) contradicting Plaintiffs' allegation that the Pfizer vaccine did not reduce the spread of COVID-19. *See supra* n. 2 and authority cited therein. This Court therefore is not obligated to take Plaintiffs' allegations as true, and *Carvalho* is thus distinguishable. *See Boysen v. PeaceHealth*, 2024 WL 3888682, at *5 (D. Or. Aug. 19, 2024) (distinguishing *Carvalho* and dismissing challenge to COVID-19 vaccine mandate, noting that in *Carvalho*, "[t]he Ninth Circuit agreed with the plaintiffs that, when uncontradicted by judicially noticeable facts, their allegations must be taken as true. . . . Here, the record is replete with judicially noticeable facts that Pfizer-BioNTech COVID-19 vaccine is a vaccine—as that term is used in *Jacobson*—'as a preventative' of Covid-19.").

Moreover, *Carvalho* is simply inapposite to the instant case, because unlike the district court in *Carvalho*, this Court has not relied on *Jacobson* in determining that rational basis review applies to Plaintiffs' due process claims.  As discussed above, the asserted liberty interest in this case is the right to public employment without receiving the vaccine, not the "right to refuse unwanted medical treatment."  As the District Court of Colorado recently observed under materially identical circumstances, "*Carvalho* does not change this Court's analysis, which

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1    is so fundamental as to require strict judicial scrutiny in a due process challenge.

2        **3.  Whether Defendants' Order Survives Rational Basis Review**

3           Because Plaintiffs have failed to identify a fundamental liberty interest underlying any of

4    their three substantive due process claims, these claims are subject only to rational basis review.

5    *See Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021) ("Courts have also consistently

6    held that . . . challenges to vaccination mandates are properly considered under rational basis

7    review.") and cases cited therein. Under rational basis review, state conduct is presumed valid and

8    will be upheld so long as it is "rationally related to a legitimate state interest." *City of Cleburne v.*

9    *Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

10          The preamble to the Order lays out extensive legitimate state interests to which the

11   mandate is rationally related:

12           COVID-19 is a threat to life and public health. . . . the WHO has raised the health
13           emergency to the highest level requiring dramatic interventions to disrupt the
             spread of this disease; . . . COVID-19 vaccines are effective in reducing serious
             disease and hospitalizations, and widespread vaccination is the primary means
14           available to the City to protect its employees and the public, including persons who
             cannot be vaccinated for medical reasons, youth who are not eligible to receive a
15           vaccine, immunocompromised individuals, and vulnerable persons. SAC, Ex. 1.

16          In their Motion, Defendants also assert that "vaccines are a safe and effective way to

17   prevent the spread of COVID-19." Defs.' MTD at 10 (citing *Smith v. Biden*, 2021 WL 5195688,

18   at *6 (D.N.J. Nov. 8, 2021); *Mass. Corr. Officers Federated Union v. Baker*, 567 F. Supp. 3d 315,

19   319–20 (D. Mass. 2021)). Defendants also cite the CDC's September 17, 2021 *Morbidity and*

20   *Mortality Weekly Report (MMWR)* to refute Plaintiffs' assertion that the vaccines did not slow the

21

22       —————————————
     does not rely on *Jacobson*, because even taking Plaintiffs' allegations as true, they have not alleged that they were
23   forcibly vaccinated or forcibly given medical treatment, [and] have not identified an articulable fundamental right at
     issue in this case."). *Sweeney v. Univ. of Colorado Hosp. Auth.*, 2024 WL 3713835, at *14.

24   ORDER GRANTING DEFENDANTS'
     MOTION TO DISMISS

25    - 23

1    spread of COVID-19. *See* Defs.' MTD at 10, n. 9.

2         The Court takes judicial notice of the CDC data, which were available to Defendants at

3    the time the Order was issued, "showing that people who were fully vaccinated against COVID-

4    19 when the Delta variant was prominent were five times less likely to become infected with the

5    disease, and ten times less likely to die or be hospitalized due to the disease than the

6    unvaccinated." *White v. Univ. of Washington*, 2024 WL 1241063, at *7 (W.D. Wash. Mar. 22,

7    2024) (taking judicial notice of same document, citing Fed. R. Evid. 201 (allowing courts to take

8    judicial notice of facts that are "capable of accurate and ready determination by resort to sources

9    whose accuracy cannot reasonably be questioned")); *United States v. Lomeli*, No. CR12-2791,

10   2022 WL 16752979, at *3, n.3 (S.D. Cal. Nov. 7, 2022) (explaining that the CDC website's

11   accuracy cannot reasonably be questioned). However, the Court need not resolve a dispute over

12   the degree of the vaccines' efficacy in slowing the spread of the virus to conclude, as the Court

13   does, that Defendants' actions were rationally related to a legitimate state interest. *See Halgren v.*

14   *City of Naperville*, 577 F. Supp. 3d 700, 738–39 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk v.*

15   *Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022) ("Because the legislative act may be based on rational

16   speculation unsupported by evidence or empirical data, the state need not produce evidence to

17   sustain its decision. Instead, despite any initial fact-finding by the court, the rational basis test

18   commands deference to legislative choice in the end. . . . Courts must, therefore, accept a

19   legislature's generalizations even when there is an imperfect fit between means and ends because

20   a law can pass muster even if it is not made with mathematical nicety.") (cleaned up, citations

21   omitted).

22        As nearly all of the cases cited in this Order have concluded, COVID-19 vaccine

23

24   ORDER GRANTING DEFENDANTS'
     MOTION TO DISMISS

25    - 24

mandates, adopted under materially identical circumstances, pass this lowest level of judicial scrutiny. *See, e.g., Boysen*, 2024 WL 3888682 at *9 ("Plaintiffs have not alleged sufficient facts from which to conclude that state Defendants do not have a rational basis for the vaccination orders."); *Sweeney*, 2024 WL 3713835, at *14 (referring to "the numerous courts concluding that similar employer-mandated vaccination requirements satisfy the rational basis test" and citing *Legaretta v. Macias*, 603 F.Supp.3d 1050, 1065 (D.N.M. 2022); *Bauer*, 568 F. Supp. 3d at 595) ("As explained above, stemming the spread of COVID-19 is a compelling government interest, and requiring hospital employees to take measures against the spread is rationally related to that interest."); *Johnson*, 2021 WL 4846060, at *14 (Oregon's vaccine mandates "are rationally related to Defendants' interests in slowing the spread of COVID-19, protecting Oregon's citizens, protecting children and teachers in schools, and preserving healthcare resources and protecting patients."); *Williams*, 567 F. Supp. 3d at 1227 ("[T]he vaccine mandates easily survive rational basis review."); *Halgren v. City of Naperville*, 577 F. Supp. 3d 700, 746 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022) (Plaintiffs' substantive due process challenge to vaccine mandate fails "because this Court has found, as discussed above, 'conceivable' grounds for the mandate, and therefore on the present record, this Court cannot say that the relationship between the government's legitimate ends (*i.e.*, decreasing the possible degree of viral transmission . . .) is 'so attenuated' from the chosen means (*i.e.*, compelling healthcare workers to either submit to vaccination . . . ) as to be arbitrary, irrational, or otherwise beyond the bounds of reasonable speculation."). Plaintiffs have cited no authority to the contrary. Their Substantive Due Process Clause claims at the Fourth, Fifth, and Sixth Causes of Action are, accordingly, dismissed.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### D. Eighth Cause of Action: Deprivation of Right of Privacy

Plaintiffs' Eighth Cause of Action, brought under 42 U.S.C. § 1983, claims a "Deprivation of Right of Privacy." SAC, ¶¶ 255-61. In support of this claim, Plaintiffs allege that they were required "to involuntarily surrender their Private Health Information to the City's human resources department if and when one of the investigational drugs was injected into their bodies." *Id.*, ¶ 258. They claim this requirement was a violation of their "Fourteenth Amendment right to privacy." *Id.*, ¶ 261.[10]

The parties agree that this claim purports to vindicate a "constitutionally protected privacy interest in avoiding disclosure of personal matters." Pls.' Opp. at 15 (citing *Norman-Bloodsaw v. Lawrence Berkeley Lab*, 135 F.3d 1260, 1269 (9th Cir. 1998)); Defs.' MTD at 11 (citing *A.C. ex rel. Park v. Cortez,* 34 F.4th 783, 787 (9th Cir. 2022)). In the Ninth Circuit, this "informational privacy" right "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014). Courts apply a balancing test, weighing: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Cortez*, 34 F.4th at 787.

Related to the first and second considerations, Plaintiffs argue that the "type of information requested" was of a highly sensitive nature, and that the "potential for harm" included

---

[10] The Eighth Cause of Action does not explicitly invoke the Due Process Clause, but in opposition to Defendants' Motion to Dismiss, Plaintiffs argue in support of their Right of Privacy under the heading "Substantive Due Process."

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 26

being "constantly subjected to injury, embarrassment, stigma, harassment, ridicule, scorn, and financial penalties." Pls.' Opp. at 16. Plaintiffs have not alleged any facts supporting this claimed embarrassment, stigma, or ridicule which, in the total absence of such allegations, the Court finds overstated and implausible. *See Schmidt v. City of Pasadena*, 2024 WL 1640913, at *14 (C.D. Cal. Mar. 21, 2024) (citing *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999)) ("There is no basis to accept an allegation that an individual's [COVID-19] vaccination status is 'sensitive or intimate' under this standard, and the alleged circumstances surrounding the disclosure of Plaintiff's vaccination status do not support the inference that it was likely to cause 'injury, embarrassment, or stigma.'"). The only claimed injury that is supported by Plaintiffs' allegations is the loss of employment with the City, which is attributable not to any violation of their "informational privacy" rights (*i.e.*, disclosure of their vaccination status), but to their refusal to receive the vaccine.

Plaintiffs fail to allege any facts at all that would support their claim as to the third consideration, the adequacy of safeguards to prevent unauthorized disclosure, and do not claim that any unauthorized disclosure in fact occurred. As to the fourth and fifth factors—the degree of need for access to the information, and whether there was a "recognizable public interest" supporting that need—the Court makes reference to the discussion, *supra*, concerning Plaintiffs' substantive due process claims. The Order was based upon at least a "recognizable public interest"—that is, "to slow the spread of COVID-19" and in particular, to protect "high risk populations such as people with underlying medical conditions and the elderly," which was clearly articulated in the Order itself. Order, SAC, Ex. A; *see Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1   unquestionably a compelling interest."). Although Plaintiffs dispute that the vaccines served this

2   interest, as discussed at length above, the Court concludes that Defendants' actions were based

3   upon judicially noticeable data and thus were, at a minimum, rationally related to that interest.

4          Taking the foregoing considerations into account, the Court concludes that "the alleged

5   disclosure of Plaintiff[s'] vaccination status does not sufficiently state an impermissible invasion

6   of the right to informational privacy." *Schmidt*, 2024 WL 1640913, at *14; *see also Miller v.*

7   *Farris*, 2023 WL 4680370, at *5 (C.D. Cal. June 14, 2023), report and recommendation adopted

8   sub nom. *Miller v. Ferris*, 2023 WL 4850749 (C.D. Cal. July 28, 2023) (dismissing informational

9   privacy challenge to COVID-19 vaccine mandate; citing *Kheriaty v. Regents of Univ. of*

10  *California*, 2021 WL 4714664, at *6, 9 (C.D. Cal. Sept. 29, 2021) (policy requiring the disclosure

11  of employee's vaccination status did not violate plaintiff's fundamental right to informational

12  privacy because his employers demonstrated a legitimate governmental interest in receiving the

13  information)). Because, as discussed above, the Order survives a rational basis review, Plaintiffs'

14  Eighth Cause of Action is dismissed.

15          **E.  Third Cause of Action: Procedural Due Process**

16          Defendants seek dismissal of Plaintiffs' Third Cause of Action, for "Deprivation of

17  Procedural Due Process Rights." SAC, ¶¶ 200-16. In that claim, Plaintiffs again invoke the PREP

18  Act, the "EUA Statute, the Provider Agreement, 10 U.S.C. § 980, and the State's FWA," which

19  laws they claim "provide Plaintiffs with statutory and federal program entitlements to give their

20  legally effective informed consent before being injected with federally funded investigational

21  drugs, which they were deprived of by Defendants' Policy." SAC, ¶ 207. Plaintiffs contend that

22  "Defendants owed Fourteenth Amendment obligations to Plaintiffs and could not deprive them of

23

24  ORDER GRANTING DEFENDANTS'
    MOTION TO DISMISS

25   - 28

their statutory entitlements and terminate their property interest to public employment without 'some form of hearing.'" *Id.*, ¶ 210 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

This Court has already observed, in upholding a similar COVID-19 vaccine mandate issued to certain state agency employees, that the "essential requirements of due process . . . are notice and an opportunity to respond." *Pilz v. Inslee*, 2022 WL 1719172, at *7 (W.D. Wash. May 27, 2022), *aff'd*, 2023 WL 8866565 (9th Cir. Dec. 22, 2023) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). As in *Pilz*, Plaintiffs here "cannot seriously maintain that they did not have written notice of the vaccine requirement." *Pilz*, 2022 WL 1719172, at *7. There is no allegation that Plaintiffs were unaware of Defendants' Order, which clearly articulated the vaccine requirements, set reasonable deadlines, and outlined the consequences of failure to comply. *See* SAC, Ex. A. The Order also explicitly provided an opportunity to be heard, providing that "[e]mployees seeking reasonable accommodations for legitimate medical reasons or sincerely held religious beliefs may apply for an accommodation," and that "[r]equests for reasonable accommodations will be evaluated on an individualized basis." *Id.*, p. 3. In fact, Plaintiffs allege they "submitted religious and medical exemption requests," but were simply dissatisfied that those requests were denied. SAC, ¶ 126.

As the Ninth Circuit recently noted in discussing (and upholding) another COVID-19 vaccine mandate, this one issued to firefighters in Washington state, "with respect to a categorical challenge to the substance of a generally applicable law impacting property rights—such as 'continued employment in a state job'—we have held that no procedural due process is required beyond the proper promulgation of the new substantive rule." *Bacon v. Woodward*, 2024 WL 3041850, at *2 (9th Cir. June 18, 2024) (citing *Rea v. Matteucci*, 121 F.3d 483, 484–85 (9th Cir.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 29

1997)) ("As the district court recognized, the firefighters had 'advance notice of the vaccination

requirement,' were 'offered ... the opportunity to participate in *Loudermill* hearings,' and were

'communicated the results of those hearings along with proposed alternative accommodations.'

The firefighters did not like the substance of the City's construction of the Proclamation in their

individual cases, but that is not a procedural due process objection."). Plaintiffs here have not

claimed that the Order was not "properly promulgated"—the only procedural process they were

due—and "the Court joins other district courts around the country that have rejected procedural

due process challenges to employer-issued vaccine mandates during the COVID-19 pandemic,

finding employees are not entitled to greater service than what is provided by enactment of the

mandates themselves.'" *Pilz*, 2022 WL 1719172, at *7 (cleaned up, citing *Wise v. Inslee*, 2022

WL 1243662, at *5 (E.D. Wash. Apr. 27, 2022)); *Bacon v. Woodward*, 2021 WL 5183059, at *3

(E.D. Wash. Nov. 8, 2021); *Harris v. Univ. of Massachusetts, Lowell*, 557 F. Supp. 3d 304, 312

(D. Mass. 2021); *Valdez,* 559 F.Supp.3d 1161; *Bauer*, 568 F.Supp.3d 573). Because no

procedural due process violation has occurred, Plaintiffs' Third Cause of Action is dismissed.

## F.  Second Cause of Action: Deprivation of Equal Protection Rights

Defendants seek dismissal of Plaintiffs' Second Cause of Action, brought under 42 U.S.C.

§ 1983, for a claimed "Deprivation of Equal Protection Rights." SAC, ¶¶ 185-99. This claim

explicitly invokes the "class of one" doctrine, alleging that "Plaintiffs were public employees and

were discriminated against by Defendants when Defendants issued and enforced their unlawful

Policy." *Id*., ¶ 192. Plaintiffs claim "Defendants only discriminated against those who chose the

option to refuse and not those who chose the option to accept under the EUA Statute and PREP

Act," and "Defendants' Policy treated a class of public employees who refused an EUA product

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1    differently than those who accepted it." *Id.*, ¶¶ 193-94.

2         Under the Fourteenth Amendment to the U.S. Constitution, "no state shall 'deny to any

3    person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

4    all persons similarly situated should be treated alike." *Cleburne*, 473 U.S. at 439 (quoting *Plyler*

5    *v. Doe*, 457 U.S. 202, 216 (1982)). As with challenges under the Due Process Clause, "[c]ourts

6    have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under

7    the Equal Protection Clause and have instead applied rational basis review." *Williams*, 567 F.

8    Supp. 3d at 1227–28 (citations omitted). Plaintiffs have not argued, and based upon their

9    allegations would not be able to establish, that they are members of a suspect class. *See Boysen*,

10   2024 WL 3888682, at *8 ("[U]nvaccinated individuals do not constitute a suspect class.")

11   (quoting *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, 2022 WL

12   16722357, at *10 (S.D. Cal. Nov. 4, 2022)); *Schmidt*, 2023 WL 4291440, at *11 ("Plaintiff has

13   not shown that distinguishing between vaccinated and unvaccinated individuals reflects a suspect

14   classification."). Furthermore, as discussed elsewhere in this Order, Plaintiffs have not articulated

15   a fundamental right at stake. *See, e.g., supra*, § III.C.2. Accordingly, Plaintiffs' Equal Protection

16   claim is subject to rational basis review. *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680

17   (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993) ("[A] classification neither involving

18   fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection

19   Clause if there is a rational relationship between the disparity of treatment and some legitimate

20   governmental purpose.").

21        As discussed above with respect to Plaintiffs' substantive due process claims, Section

22   III.C.3, Defendants' Order passes rational basis review. *See Williams*, 567 F. Supp. 3d at 1228

23

24   ORDER GRANTING DEFENDANTS'
     MOTION TO DISMISS

25

("The rational basis review test is functionally the same under substantive due process and the Equal Protection Clause.") (citing *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997)). "Stemming the spread of COVID-19 is unquestionably a compelling interest," *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 67, and in issuing the Order, Defendants rationally relied upon judicially noticeable data supporting their actions. *See supra*, § III.C. 3. Plaintiffs have again cited no authority holding to the contrary. Plaintiffs' Second Cause of Action is dismissed.

### G.  Seventh Cause of Action: Unconstitutional Conditions

Plaintiffs bring their Seventh Cause of Action, for "Unconstitutional Conditions," under 42 U.S.C. § 1983. *See* SAC, ¶¶ 250-54. As Plaintiffs correctly assert, the state cannot condition the granting of a privilege on the relinquishment of one's constitutional rights. *Id.*, ¶ 251. Plaintiffs claim Defendants violated this doctrine by conditioning continued public employment on the surrender of Plaintiffs' rights: to wit, their "due process, privacy, equal protection, public employment, [and] property interests." *Id*. ¶ 252. As outlined above, however, the Order does not violate these enumerated rights. Plaintiffs' Seventh Cause of Action therefore necessarily also fails. *See Legaretta*, 603 F. Supp. 3d at 1070–71 (vaccine mandate "does not violate any of Plaintiffs' fundamental rights[, and w]ithout identifying a fundamental right, Plaintiffs' challenge to the Vaccine Mandate as an unconstitutional condition necessarily fails."); *Smith*, 2021 WL 5195688, at *8 (rejecting Unconstitutional Conditions Claim because plaintiffs are "presented with a choice and are not being coerced to give up a fundamental right since there is no fundamental right to refuse vaccination."). Plaintiffs' Seventh Cause of Action is dismissed.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1

**H. Ninth Cause of Action: 42 U.S.C. § 1983 – *Monell* Liability**

In their Ninth Cause of Action, Plaintiffs assert under 42 U.S.C. § 1983 a claim against the municipal defendant, the City of Bellingham, for "*Monell* Liability." SAC, ¶¶ 262-88. The claim again makes reference to the PREP Act, the EUA Act, the Equal Protection and Due Process Clauses, and the Supremacy Clause, and asserts that Defendant City of Bellingham is liable for violations of these various federal provisions. In responding to Defendants' Motion to Dismiss this claim, Plaintiffs fail to argue or demonstrate that the City has any liability that is not predicated on at least one of the claims reviewed—and dismissed—above. Because the Court has dismissed all of Plaintiffs' federal constitutional and statutory causes of action on their merits, Plaintiffs are unable to state a claim for liability against the City under *Monell* as well. Plaintiffs' Ninth Cause of Action is therefore dismissed.

**I. State Law Claims**

**1. Tenth Cause of Action "Against Defendant City of Bellingham, Wrongful Termination"**

Plaintiffs' state-law claims include their Tenth Cause of Action, against Defendant City of Bellingham, for "Wrongful Termination." SAC, ¶¶ 289-94. Plaintiffs assert that the City violated state common law that authorizes individuals "to exercise a federal or legal right without losing employment when doing so." *Id.*, ¶ 292 (citing, inter alia, *Becker v. Cmty. Health Sys., Inc.*, 184 Wn. 2d 252 (2015)). The "federal or legal rights" Plaintiffs invoke are those already discussed above: the right "to refuse products under each statute"—that is, the PREP Act and the EUA Act—"without penalty or pressure, . . . and the rights to refuse investigational drugs and to refuse unwanted medical treatment." *Id.*, ¶ 293. Defendants seek dismissal of this cause of action as well.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

In Washington, the tort of wrongful discharge "is a narrow exception to the doctrine of at-will employment." *Becker*, 184 Wn. 2d at 258. "To state a cause of action, the plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy." *Id*. Wrongful termination claims are limited to a narrow set of scenarios, including most relevantly here, "where employees are fired for exercising a legal right or privilege." *Id*. As repeatedly noted above, Plaintiffs have failed to demonstrate that they were exercising a "legal right or privilege," under either state or federal constitutional or statutory law. The Tenth Cause of Action is, accordingly, dismissed as well.

### 2.    Eleventh Cause of Action: Intentional Infliction of Emotional Distress

Plaintiffs' Eleventh Cause of Action is for Intentional Infliction of Emotional Distress ("IIED," also known as the tort of outrage). SAC, ¶¶ 295-97. To establish a claim for IIED, a plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) an actual result of severe emotional distress." *Kloepfel v. Bokor,* 149 Wn. 2d 192, 195 (2003) (citations omitted). An IIED claim must be predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

In support of this claim, Plaintiffs aver that "Defendants engaged in a scorched-earth policy and inflicted, with malicious intent, emotional distress to the fullest extent that one in their positions of authority and power could inflict, all to the detriment of Plaintiffs' emotional well-being." SAC, ¶ 296. This Court has already held that a materially identical COVID-19 vaccine mandate did not meet the level of "extreme and outrageous conduct" necessary to support a claim under Washington state law for intentional infliction of emotional distress. *Curtis v. Inslee*, 709 F.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 34

1  Supp. 3d 1257, 1271 (W.D. Wash. 2023) ("The Plaintiffs' outrage claim should be dismissed. The

2  properly credited allegations in the Amended Complaint are insufficient from which to conclude

3  that the Proclamation was 'beyond all possible bounds of decency' considering the circumstances

4  at the time."). Plaintiffs have not attempted to distinguish or discredit *Curtis*, which the Court

5  finds persuasive in any event, and have failed to cite any authority in support of their contention

6  that Defendants' actions were outrageous. As discussed above, Plaintiffs' Second Amended

7  Complaint fails to state any federal constitutional or statutory violations, or violations of state

8  law, let alone allege facts supporting their claim that Defendants' behavior was "extreme and

9  outrageous" or "beyond the bounds of decency." Accordingly, Plaintiffs have failed to state a

10  claim for intentional infliction of emotional distress, and their Eleventh Cause of Action is

11  dismissed.

12  **J.  Leave to Amend Second Amended Complaint**

13  Federal Rule of Civil Procedure 15(a) provides in relevant part that after a party has

14  amended a pleading once as a matter of course, it may amend further only after obtaining leave of

15  the court. In general, "[t]he court should freely give leave when justice so requires." Fed. R. Civ.

16  P. 15(a)(2). In determining the propriety of granting leave to amend, Courts are required to

17  balance the following factors: (1) undue delay; (2) bad faith or dilatory motive of the moving

18  party; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue

19  prejudice to the non-moving party by virtue of allowance of the amendment; and (5) futility of

20  amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing

21  *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

22  Having considered these factors, the Court concludes that Plaintiffs are not entitled to

23

24  ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

25  - 35

amend, and the Second Amended Complaint should be dismissed with prejudice. Plaintiffs have twice amended their original Complaint, neither time attempting to cure the deficiencies outlined above. In opposing Defendants' Motion to Dismiss, Plaintiffs repeatedly failed to cite any on-point authority—within this Ninth Circuit or beyond—tending to support their position. Perhaps most critically of all, Plaintiffs have not requested leave to amend or dismissal without prejudice. They have failed to call into question or distinguish cases around the country that have, nearly unanimously, rejected COVID-19 vaccine mandate claims materially identical to theirs, and have not suggested any additional allegations on which they might rely if granted leave to amend. For all of the reasons articulated herein, the Court finds that amendment of the Second Amended Complaint or any of the dismissed causes of action putatively stated therein would be futile, and denies Plaintiffs leave to amend. This matter is dismissed with prejudice in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. This matter is dismissed with prejudice.

DATED this 21st day of January, 2025.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

- 36